JOHN BALAZS, Bar # 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
balazslaw@gmail.com

KYLE KNAPP, Bar #166587
Attorney at Law
916 2nd Street, Second Floor
Sacramento, CA 95814
Telephone: (916) 441-4717
kyleknapp@sbcglobal.net

Attorneys for Defendant
MATTHEW ROBERT ALLISON

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW ROBERT ALLISON,<br><br>Defendant. | Case No. 2:24-CR-00257-DC<br><br>**DEFENDANT MATTHEW ROBERT ALLISON'S MOTION TO DISMISS FOR SIXTH AMENDMENT VIOLATION**<br><br>*(defendant's appearance waived)*<br><br><u>Motion Hearing:</u><br>Date: October 31, 2025<br>Time: 9:30 a.m.<br>Hon. Dena M. Coggins |

## I. INTRODUCTION AND MOTION TO DISMISS

The Supreme Court has described the right to effective assistance of counsel as "a bedrock principle" and the "foundation for our adversarial system" of criminal justice. *Martinez v. Ryan,* 566 U.S. 1, 12 (2012). "The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment,

1

since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled." *Strickland v. Washington,* 466 U.S. 668, 685 (1984). Defendant Matthew Robert Allison, through counsel, now moves this Court to dismiss the indictment against him for violation of his Sixth Amendment rights by failing to fund counsel and provide the resources necessary to adequately defend the charges against him.

This motion arises from a historic funding crisis affecting Criminal Justice Act (CJA) panel attorneys, interpreters, investigators, paralegals, experts, and other service providers. Because Congress failed to pass a budget that adequately funded the judicial branch, the Administrative Office of the Courts was forced to suspend CJA payments in July of this year. *Congress Stiffs Criminal Defense Attorneys,* Washington Association of Criminal Defense Lawyers.[1] "Initially, CJA attorneys [and other professionals paid by CJA] were informed that the funding would run out on or around July 23, 2025." (*Id.*) In the last week of June, CJA panel members were advised that funding would cease on July 7th. (*Id.*) Then, on July 3rd, CJA panelists were informed that funds had run out and vouchers that had not already been processed for payment would not be paid until the next fiscal year beginning October 1." (*Id.*) At that time, panel members were assured that payments would resume on October 1, 2025.

Nonetheless, the Government shutdown has prevented the payment of outstanding CJA panel vouchers and, at the time that this motion is being filed, is on its sixteenth day. Moreover, Defender Services recently informed panel members that the system that creates checks for panel payments can only issue

---

[1] https://www.wacdl.org/article_content.asp?edition=5&section=3&article=7

between 4,000 and 5,000 payments per day. As of October 8, 2025, there were over 70,000 outstanding payments. The backlog increases daily. This means that, even when funding is authorized by Congress, panel members will have weeks more of delay before they receive payment. If a funding agreement comes in the form of a short-term continuing resolution, it may not last long enough for the voucher payment system to eliminate the backlog of voucher payments. Even if, and when, the instant funding crisis is resolved, panel members have been advised to expect a $120 million shortfall in the FY26 budget, meaning that CJA panel payments are likely to be suspended again sometime next year, likely before July. As a result of the failure to fully fund the judicial branch and the severity and enduring nature of the resulting funding crisis, the defense is not able to do its job and the lack of adequate funding violates the minimum constitutional standards required for effective representation.[2]

      The reason that the federal criminal justice system has continued to run since July is that dedicated CJA panel professionals have been finding ways to make ends meet while operating in good faith that the Government would uphold its obligation to pay them for money owed come October 1, 2025.  *See* Exhibit A, NACDL Report, "The Impact of Criminal Justice Act Payment Delays, Sept. 22, 2025.  There are limits, however, to what CJA professionals can do, and what they should be expected to do, to uphold the Sixth Amendment right to counsel. At this point, the burden has been placed *solely* on the shoulders of these dedicated

---

[2]    For perspective, rather than approve the $120 million shortfall needed to fully fund the judicial branch, and provide adequate funding for CJA panel attorneys, interpreters, investigators and experts, "Congress just approved $170 <u>billion</u> for immigration enforcement, and $45 <u>billion</u> alone to build immigration detention facilities." (*Congress Stiffs Criminal Defense Attorneys,* Washington Association of Criminal Defense Lawyers) (emphasis added).[2]

professionals. As we have crossed into the fourth month of this arrangement, facing a deadlocked Congress, a severe backlog of vouchers in the payment processing system, and an expectation that the budget for the judicial branch will be, again, be deficient for the next fiscal year, this arrangement has become untenable and violates Mr. Allison's Sixth Amendment rights to counsel, to prepare a defense, and to a fair and speedy trial.

## II.  FACTUAL BACKGROUND

In an indictment filed September 5, 2024, the government charged defendants Dallas Humber and Matthew Allison with the following 15 counts: conspiracy in violation of 18 U.S.C. § 371 (count 1); solicitation of a hate crime in violation of 18 U.S.C. § 373 (counts 2-5); solicitation of murder of a federal official in violation of 18 U.S.C. § 373 (counts 6-8); doxing of federal officials in violation of 18 U.S.C. § 119  (counts 9-11); interstate threatening communications in violation of 18 U.S.C. § 875(c) (count 12); distribution of information relating to explosives and destructive devices in violation of 18 U.S.C. § 842(p) (counts 13 and 14); and conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A (count 15).  ECF No. 1.

At the initial appearance in this district, the magistrate court appointed undersigned counsel John Balazs to represent Mr. Allison.  ECF No. 21.  Given the complexity of the charges and the voluminous discovery, the Court granted Mr. Allison's application for appointment of a second attorney, Kyle Knapp, to represent Mr. Allison.  ECF No. 31.

At a status conference on January 17, 2025, the Court granted the government's request to designate a Classified Information Security Officer to handle case-related classified information pursuant to the Classified Information

Procedures Act ("CIPA"), and, at the request of counsel for both defendants, the Court deferred setting a discovery and motion schedule in relation to the classified information. Ms. Humber has since pled guilty to all charges in the Indictment pursuant to a plea agreement with the government and is awaiting sentencing. ECF No. 73. A further status conference has been set for Mr. Allison on October 31, 2025.

This case and its discovery is exceedingly large and complex and requires extensive preparation for effective assistance of counsel. In its first two productions of discovery, the government provided over 60,000 bates numbered pages. Many of these pages were placeholders for additional "native" files of voluminous spreadsheets and audio and video recordings. In March and April 2025, the government provided its third supplemental discovery production, including thousands of pages of documents, hundreds of hours of audio and video recordings, and the complete digital devices seized from Mr. Allison and Ms. Humber, which together comprise 25 *terabytes* of data.

Mr. Allison is currently incarcerated in Colusa County Jail, approximately 65 miles from Sacramento. The discovery materials are produced pursuant to a protective order, which makes counsel's review of the discovery with their client more time consuming.

Because CJA payments ran out in early July 2025, counsel have been working without payment for more than three months. Undersigned counsel (along with every other lawyer who accepts CJA-appointed cases) was assured that payments would resume once Congress passed a budget for Fiscal Year 2026. But Congress has failed to pass a federal budget for Fiscal Year 2026, resulting in a continued funding lapse that began on October 1, 2025, with no end in sight.

Despite the lack of compensation, counsel has continued to represent Mr. Allison to prevent immediate prejudice; however, this situation has worsened and has now put counsel in an untenable position of not being able to provide even the minimum level of effective assistance of counsel required by the Sixth Amendment. Additionally, for months leading up to the current government shutdown, the government continued to prosecute this case with fully compensated prosecutors while defense counsel was, and remains, unpaid, creating a fundamental imbalance in the adversarial system.

**III.   The Court Must Dismiss the Indictment Against Mr. Allison Because the Government's Failure to Fund Counsel and Provide the Resources Necessary to Employ Investigators, Paralegals, and Experts Violates his Sixth Amendment Rights to Effective Assistance of Counsel, to Prepare an Adequate Defense, and to a Fair Trial.**

   **A.   The Sixth Amendment requires effective, adequately compensated counsel and resources to fund and prepare a defense.**

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial; . . . and to have the Assistance of Counsel for his defence." In *Gideon v. Wainwright*, 372 U.S. 335, 340 (1963), the Supreme Court held that this right requires the appointment of counsel for indigent defendants facing serious criminal charges. This right includes "the right to effective assistance of counsel." *Garza v. Idaho,* 586 U.S. 232, 237 (2019) (quoting *Strickland v Washington*, 466 U.S. 668, 686 (1984)). The Sixth Amendment's requirement that defendants receive the effective assistance of counsel extends to all critical stages of a criminal proceeding. *Rothgery v. Gillespie County,* 554 U.S. 191, 212 (2008); *see Coleman v. Alabama*, 399 U.S. 1 (1970) (finding that a preliminary hearing is a "critical stage" of the "criminal

process" requiring the assistance of counsel); *United States v. Hamilton,* 391 F.3d 1066 (9th Cir. 2004) (holding that a pretrial motion to suppress is a "critical stage" requiring counsel).

"The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause." *Stickland,* 466 U.S. at 685. As a result, the Supreme Court has recognized that the right to counsel is meaningless without adequate resources to mount an effective defense. *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985) (due process requires provision of basic tools of adequate defense); *see also Strickland,* 466 U.S. at 685 (explaining that the "Government violates the right to effective assistance when it interferes with the ability of counsel to make independent decisions about how to conduct the defense"). This principle necessarily extends to ensuring that appointed counsel receives the compensation promised under federal law. The promise of *Gideon* cannot be fulfilled when counsel is appointed but is not provided the resources to provide effective assistance of counsel.

**B.   The failure to pay counsel and fund essential investigators, paralegals, and experts violates the Sixth Amendment.**

The prolonged non-payment of appointed counsel violates the Sixth Amendment in several ways. When the government fails to provide promised compensation for months on end, it constructively denies the right to counsel. No attorney can be expected to work indefinitely without compensation while maintaining the zealous advocacy required by professional standards and constitutional mandates. Congress enacted the Criminal Justice Act to ensure that indigent defendants receive competent counsel by guaranteeing reasonable compensation to appointed attorneys. 18 U.S.C. § 3006A(d). This statutory scheme creates not merely an administrative directive, but an enforceable right essential to

Sixth Amendment compliance. The government cannot simultaneously pursue a criminal prosecution while refusing to fund counsel and the defense team under the Criminal Justice Act. Further, the failure to fund appointed defense counsel violates fundamental fairness and equal protection principles inherent in the adversarial system. *See Griffin v. Illinois*, 351 U.S. 12, 18 (1956).

In this case, the defense is no longer able to provide effective assistance of counsel without adequate funding. Counsel are not close to completing their review of discovery and, with the shutdown, are unable to do so for the foreseeable future. Counsel have identified numerous potentially meritorious motions but cannot undertake the time-intensive task of researching and drafting such motions. Counsel have not seen their client since the government shutdown began and are reducing legal visits with their client to a bar minimum until the government shutdown ends and adequate funding is provided. This prevents the defense from adequately reviewing discovery with their client or otherwise consulting with him on numerous important issues. Beyond counsel, the defense's paralegal, investigator, and forensic digital device expert have not been compensated for over three months and have largely stopped working on the case. In these circumstances, counsel can no longer provide effective assistance of counsel and continued delay while the defendant remains in custody without working counsel also jeopardizes Mr. Allison's constitutional and statutory right to a speedy trial.

**C.    Dismissal is the appropriate remedy.**

Congress has never before so thoroughly failed in its obligation to fund constitutionally-required defense counsel. As such, this case appears to be one of first impression. Courts exist precisely to address constitutional violations when they arise, not to wait for other courts to act first. As Justice Marshall noted in *Furman v. Georgia*, 408 U.S. 238, 269 (1972), The Eighth Amendment, like the

other great clauses of the Constitution, "must draw its meaning from evolving standards of decency…" Similarly, the Sixth Amendment's guarantee must respond to unprecedented governmental failures. When Congress creates an unprecedented crisis, courts must fashion unprecedented remedies.

Courts possess inherent supervisory power to remedy serious structural defects in the criminal process. *See, e.g., United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (recognizing structural error doctrine), and maintain judicial authority to dismiss indictments in extreme cases under their supervisory authority. The three recognized bases for the exercise of supervisory power are: (1) to remedy a violation of a statutory or constitutional right; (2) to preserve judicial integrity; and (3) to deter future illegal conduct. *United States v. Simpson,* 927 F.2d 1088, 1090 (9th Cir. 1991).

Here, the government's failure to ensure reliable funding for appointed counsel has resulted in a violation of Mr. Allison's Sixth Amendment rights, undermines judicial integrity, and is necessary to deter future funding shortfalls. CJA counsel must be able to function without crippling uncertainty; otherwise, the guarantee of effective assistance becomes hollow.  This is not a case of incidental delay or administrative inconvenience. The failure is systemic, affecting all panel counsel and causing deferred payments, payment uncertainty, and resource constraints. Such a pervasive defect is a structural defect. The defect here arises from the government's forfeiture of its duty to maintain the institutional framework required for adversarial testing. Without reliable compensation, defense counsel cannot fully engage over the life of the case. To permit the prosecution to continue would allow the government to proceed with an inherently unfair structural advantage over indigent defendants in violation of the Sixth Amendment.

### D. Alternative Remedies Are Inadequate.

The defendant does not merely seek increased funding (which is beyond this Court's power), but demands that the prosecution be halted in light of the total lack of funding that systematically degrades the right to counsel. A more limited remedy (e.g. staying proceedings) would not fully redress the structural harm or provide effective representation of counsel. This Court should not permit federal prosecutions to proceed in a regime where defense counsel are forced to litigate effectively without reliable compensation or support, in circumstances that prevent them from providing constitutionally adequate representation—or deter counsel from zealous advocacy altogether. Dismissal of the Indictment is the only adequate remedy for this structural deficiency. Dismissal is the only remedy that fully preserves the integrity of the adversarial process under these extreme conditions.

### E. Future federal prosecution is barred by willful constitutional violation.

Should the government resolve its budget impasse and restore funding for appointed counsel, future prosecution of this case in federal court would nevertheless be inappropriate. The government's willful decision to continue prosecution while refusing to compensate defense counsel constitutes an egregious violation of Mr. Allison's constitutionally protected rights. Permitting the government to later re-prosecute after deliberately creating these unconstitutional conditions would reward governmental misconduct and undermine respect for constitutional limitations on prosecutorial power.

IV. **If the Court Does Not Dismiss the Indictment, the Sixth Amendment Violation Here Warrants Mr. Allison's Release from Custody Regardless of Flight Risk and/or Danger Because the Current Violation of his Sixth Amendment Right to Counsel is a "Compelling Reason" Justifying Release Under 18 U.S.C. § 3142(i).**

Should the Court decline to dismiss, Mr. Allison respectfully requests that the Court remedy this violation through temporary release of Mr. Allison until such time that it can be ascertained that there will be adequate CJA funding to support his right of counsel for the remainder of his case, a stay of prosecution and correction of the immediate funding shortage. Mr. Allison cannot be forced to waive his right to a Speedy Trial and assent to delays in prolonged detention while his defense team is unable to continue to prepare a defense due to the total lack of CJA funding.

18 U.S.C. § 3142(i) authorizes temporary release "to the extent the judicial officer determines such release to be necessary for preparation of the person's defense or *for another compelling reason*." 18 U.S.C. § 3142(i) (emphasis added). Release on these grounds is permissible regardless whether the defendant is a flight risk or a danger to the community.

This provision, allowing release regardless of flight risk and/or danger, is exactly what allows Courts the power to be nimble in their response to something unforeseen and of great consequence like the denial of compensated counsel due to the current funding crisis. 18 U.S.C. § 3142(i) provides, in relevant part:

> Contents of Detention Order. -- In a detention order issued under subsection (e) of this section, the judicial officer shall—[follow rules related to the detention order that are not at issue here]….[and] The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense *or for another compelling reason*.

18 U.S.C. § 3142(i) (emphasis added). By its plain terms, § 3142(i) permits the temporary release of a person who is otherwise subject to detention under section 3142(e) for the preparation of one's defense, or for another compelling reason. A person is subject to detention under § 3142(e) only if the trial court finds that the person is either a flight risk or a danger to the community. By permitting such a person to be temporarily released despite such findings, Congress plainly intended this portion of § 3142(i) to be an exception to the general rule of detention.

This interpretation is supported by a comparison between § 3142(i) and a similar provision in § 3145(c), which permits release for "exceptional reasons." 18 U.S.C. § 3145(c) provides that:

> "[a] person subject to detention pursuant to section 3143(a)(2) or (b)(2) [detention pending sentencing or detention pending appeal], and *who meets the conditions of release set forth in section 3143(a)(1) or (b)(1) [judicial finding that they are not a flight risk or a danger]*, may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."

(emphasis added). As can be seen through comparison, release pending sentencing/appeal for "exceptional reasons" requires a finding that the person poses no flight risk or danger. By contrast, release under § 3142(i) for the need to prepare one's defense and other compelling reasons does not have a similar finding. Thus, the analysis of whether to release a defendant based on the need to prepare a defense or a compelling reason under § 3142(i) provides for no review of flight risk/dangerousness as those are presumed.

Should the court remedy the Sixth Amendment violation by releasing the defendant for a "compelling reason" under § 3142(i), the Court should also stay all proceedings until counsel and the defense team's funding is fully restored to provide for adequate representation and the ability to prepare a defense.

## V. Conclusion

The federal government cannot maintain the fiction of providing constitutionally adequate counsel while refusing to pay for such representation. The prolonged non-payment of appointed counsel violates defendant's Sixth Amendment rights and the fundamental guarantee of *Gideon v. Wainwright*, warranting dismissal of the indictment. To permit this prosecution to continue under these circumstances would render *Gideon* a hollow promise and reduce the Sixth Amendment to mere words on parchment. The integrity of our constitutional system demands more.

For these reasons, the Court should grant Mr. Allison's motion and dismiss the indictment with prejudice. Even if the Court does not dismiss the indictment, the Court should order Mr. Allison released from custody pending the resolution of the funding crisis, stay proceedings, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 16, 2025

/s/ Kyle Knapp
KYLE KNAPP

/s/ John Balazs
JOHN BALAZS

Attorneys for Defendant
MATTHEW ROBERT ALLISON