UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW ROBERT ALLISON,<br><br>Defendant. | No. 2:24-cr-00257-DC-2<br><br>ORDER DENYING DEFENDANT <u>MATTHEW ROBERT ALLISON'S MOTION TO DISMISS THE INDICTMENT</u><br><br>(Doc. No. 81) |

This matter came before the court on November 14, 2025 for a hearing on Defendant Matthew Robert Allison's motion to dismiss the indictment with prejudice under Federal Rule of Criminal Procedure 12(b)(1) due to violation of his Sixth Amendment right to counsel, specifically due to the government's failure to adequately compensate his appointed counsel. (Doc. No. 81.) For the reasons explained below, Defendant's motion will be denied.

**BACKGROUND**

On September 5, 2024, Defendant Allison, along with his co-defendant Dallas Erin Humber, were indicted on the following fifteen counts: Count 1 for Conspiracy (18 U.S.C. § 371); Counts 2–5 for Solicitation of a Hate Crime (18 U.S.C. § 373); Counts 6–8 for Solicitation of the Murder of a Federal Official (18 U.S.C. § 373); Counts 9–11 for Doxing Federal Official (18 U.S.C. § 119(a)(1)); Count 12 for Interstate Threatening Communication (18 U.S.C. § 875(c)); Count 13 for Distribution of Information Relating to Explosives and Destructive Devices

in Furtherance of Assault and Murder of Federal Officials (18 U.S.C. § 842(p)); Count 14 for Distribution of Information Relating to Explosives and Destructive Devices in Furtherance of Hate Crimes (18 U.S.C. § 842(p)); and Count 15 for Conspiracy to Provide Material Support to Terrorists (18 U.S.C. § 2339A). (Doc. No. 1.) This case is in pretrial proceedings with a status conference currently set for February 6, 2026, with time excluded through that date. (Doc. No. 86.) The court has not set a trial date for this case.

During Defendant's initial appearance on October 10, 2024, the court appointed counsel, specifically Attorney John Paul Balazs, to represent Defendant in this case pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A. (Doc. No. 21.) Shortly thereafter, on October 29, 2024, the court granted Defendant's application for the appointment of second counsel due to the complex nature of this case, and the court appointed CJA Attorney Kyle Knapp as second counsel. (Doc. No. 31.)

The CJA provides "[a]ny attorney appointed pursuant to this section, . . . shall, at the conclusion of the representation or any segment thereof, be compensated" at specific hourly rates, by submitting vouchers to the Judiciary.[1] 18 U.S.C. § 3006A(d)(1). The Judiciary acknowledged that funding for CJA panel attorneys for fiscal year 2025 was depleted around July 3, 2025. *See* CJA Panel Attorney Funds Information FY 2025, available at https://www.uscourts.gov/about-federal-courts/defender-services/cja-panel-attorney-funds-informationfy-2025 (updated Oct. 6, 2025). The Judiciary also confirmed that "[p]anel attorney payments will resume when a continuing resolution is passed by Congress and signed into law by the President." *See id.*

Since early July 2025 through the November 14 hearing, Attorney Balazs and Knapp had not received compensation for the cases in which the court appointed them as CJA counsel to represent indigent criminal defendants. (Doc. No. 81 at 5.) Nevertheless, defense counsel continued their work in preparing Defendant's defense. (*Id.* at 6.) Indeed, in a stipulation filed by the parties on July 26, 2025, requesting to continue a status conference set for August 8, 2025 to

---

[1] "Representation under [the CJA] shall include counsel and investigative, expert, and other services necessary for adequate representation." 18 U.S.C. § 3006A(a).

October 31, 2025, Defendant's counsel represented that they had "expended over 300 hours to date working on the case but will need significant [sic] more time to complete review of discovery, conduct investigation, evaluate and prepare pretrial motions, and consult with Mr. Allison at the Colusa County Jail." (Doc. No. 69 at ¶ 4.) At the time of filing that stipulation, defense counsel was aware that CJA funding had run out and that CJA payments were expected to resume when Congress passed a new federal budget, which the Judiciary expected to be October 1, 2025, (*see* Doc. No. 81 at 5), and yet the stipulation makes no mention of the CJA funding issues nor that counsel would be unable to perform their duties during that time. To the contrary, defense counsel represented to the court that they would continue their work on Defendant's case and needed the additional time for effective preparation. (Doc. No. 69 at ¶¶ 3–5.) The court granted the parties' requested continuance of the status conference to October 31, 2025. (Doc. No. 71.)

On October 16, 2025, Defendant filed the pending motion, arguing that the non-payment situation has worsened due to Congress's failure to pass a budget, which led to a government shutdown that "result[ed] in a continued funding lapse that began on October 1, 2025, with no end in sight." (Doc. No. 81 at 5–6.) Defendant argues that "[a]s a result of the failure to fully fund the judicial branch and the severity and enduring nature of the resulting funding crisis," defense counsel have been placed "in an untenable position of not being able to provide even the minimum level of effective assistance of counsel required by the Sixth Amendment." (*Id.* at 6.)

The government filed an opposition to Defendant's motion to dismiss the indictment on November 6, 2025. (Doc. No. 83.) On November 11, 2025, Defendant filed a reply thereto. (Doc. No. 84.) The next day, on November 12, 2025, Congress passed and the President signed a continuing resolution that ended the federal government shutdown and provided funds for the Judiciary to make payments to CJA attorneys both for the backlog of vouchers that had already been submitted and for ongoing defense operations. The court understands from counsel's representations at the November 14, 2025 hearing that backlog payments were expected to be made during the last two weeks of November 2025, and the parties have not since alerted the court that those payments were not completed as expected.

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 12(b)(1) allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "Generally, Rule 12(b) motions are appropriate to consider 'such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction.'" *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citation omitted).

However, a district court may also dismiss an indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (citing *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010)). "Dismissal is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available," *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991), and the defendant suffers "substantial prejudice," *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) (citation omitted).

**ANALYSIS**

**A.   Sixth Amendment Right to Counsel**

The Sixth Amendment provides as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. The United States Supreme Court has construed the Sixth Amendment right to the assistance of counsel "to mean that in federal courts counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived." *Gideon v. Wainwright*, 372 U.S. 335, 340 (1963). "This right has been accorded, . . . 'not for its

own sake, but because of the effect it has on the ability of the accused to receive a fair trial.'" *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)). "It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate." *Micken*, 535 U.S. at 166 (citing *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984)).

The Supreme Court has long recognized "that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense." *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). The Supreme Court further acknowledged that while the government need not "purchase for the indigent defendant all the assistance that his wealthier counterpart might buy," "fundamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system.'" *Id.* (quoting *Ross v. Moffitt,* 417 U.S. 600, 612 (1974)). In implementing this principle, the Supreme Court emphasized that the focus is on ensuring the "basic tools of an adequate defense" are "provided to those defendants who cannot afford to pay for them." *Ake*, 470 U.S. at 77 (citation omitted).

Under the Sixth Amendment, defendants have a "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *Lockhart v. Terhune*, 250 F.3d 1223, 1226 (9th Cir. 2001) ("A criminal defendant's Sixth Amendment right to counsel includes the right to be represented by an attorney with undivided loyalty."). However, the Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983); *see also McGill v. Shinn*, 16 F.4th 666, 690 (9th Cir. 2021) (noting that "[n]othing in the Sixth Amendment suggests that an accused is entitled to 'rapport' with his attorney").

"[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Notably, the standard is not one of perfect performance, nor a standard that requires the absolute best from the defendant's attorney. Indeed, "an attorney's violation of a rule of ethics or professional conduct before trial

5

1  does not constitute *per se* ineffective assistance of counsel." *United States v. Nickerson*, 556 F.3d
2  1014, 1019 (9th Cir. 2009) ("There is no Ninth Circuit rule that the violation of a rule of ethics or
3  professional conduct by counsel before trial constitutes ineffective assistance of counsel *per se*.").

4  "To establish ineffective assistance of counsel, [the defendant] must bear the burden of
5  proving that defense counsel's performance fell below an objective standard of reasonableness
6  and that the deficiency prejudiced him." *United States v. Jackson*, 98 F. App'x 639, 639–40 (9th
7  Cir. 2004) (citing *Strickland*, 466 U.S. at 685). "Prejudice is shown when 'there is a reasonable
8  probability that, but for counsel's unprofessional errors, the result of the proceeding would have
9  been different.'" *United States v. Bert*, 387 F. App'x 757, 758 (9th Cir. 2010) (quoting *Strickland*,
10  466 U.S. at 694)).

11  Though claims of ineffective assistance of counsel are most often raised by defendants in
12  post-judgment habeas proceedings, district courts have discretion to hear pre-judgment ineffective
13  assistance of counsel claims. *United States v. Steele*, 733 F.3d 894, 897 (9th Cir. 2013)
14  (explaining that "when a claim of ineffective assistance of counsel is first raised in the district
15  court prior to the judgment of conviction, the district court may, and at times should, consider the
16  claim at that point in the proceeding"). A defendant who feels that they are not being provided
17  effective assistance of counsel may raise that issue with the court in a motion for the appointment
18  of new counsel. *See United States v. George*, 85 F.3d 1433, 1438 (9th Cir. 1996) (a district
19  court's denial of an indigent defendant's motion to substitute new counsel is reviewed for abuse
20  of discretion). Moreover, an appointed lawyer who feels that they are no longer able to provide
21  effective assistance of counsel must file a motion to be relieved as counsel and to have new
22  counsel appointed for the defendant. *United States v. Franklin*, 650 F. App'x 391, 393 (9th Cir.
23  2016) (finding the district court did not err in declining to grant defendant's fourth motion for
24  new counsel after having granted the prior three attorneys' motions to withdraw). Indeed, Rule
25  1.16(a) of the California Rules of Professional Conduct outlines several grounds upon which an
26  attorney "*shall* withdraw from the representation of a client." Cal. R. Prof. Conduct 1.16(a)(4)
27  (emphasis added).
28  /////

**B.      Defendant Allison's Motion to Dismiss the Indictment**

Here, Defendant asserts that his Sixth Amendment right to counsel has been violated due to "the prolonged non-payment of appointed counsel." (Doc. No. 81 at 7.) Defendant argues that "the promise of *Gideon* cannot be fulfilled when counsel is appointed but is not provided the resources to provide effective assistance of counsel." (*Id.*) However, as noted above, defense counsel knew that CJA funding had stopped in early July 2025, and yet represented to the court that they would continue working on Defendant's case and requested additional time through October 31, 2025, in which to do so. Moreover, the pending motion was filed only sixteen days after the expected payment date of October 1, 2025 had passed and the Government shutdown began.

Most importantly, defense counsel continued working on Defendant's defense, including after October 1, 2025, as emphasized in his pending motion, stating "[d]espite the lack of compensation, counsel has continued to represent [Defendant] to prevent immediate prejudice . . . ." (Doc. No. 81 at 6.) At the November 14, 2025 hearing, defense counsel confirmed that they continued their work because they did not want their client to be prejudiced, and specifically, they continued to review discovery and to go see Defendant where he was housed in the Colusa County Jail, approximately 65 miles from Sacramento. (*See* Doc. No. 81 at 5.)

Notably, the motion does not identify any "basic tools of an adequate defense," *Ake*, 470 U.S. at 77, that Defendant Allison has not been provided, nor articulate any basis upon which to find defense counsel's performance to be deficient. The court recognizes defense counsel's representations in Defendant's motion and at the November 14, 2025 hearing that since the Government shutdown began on October 1, 2025, they have reduced the frequency of visits to Defendant, and their investigator, paralegal, and forensic digital device expert had largely stopped working on this case. (Doc. No. 81 at 8.) However, given the end of the Government shutdown on November 12, 2025, and the restoration of CJA payments in the latter half of November 2025, Defendant ultimately experienced a brief delay in his counsel receiving those support staff services to aid in their investigation and work on his case. As for his legal visits with counsel, while those visits may have been less frequent than defense counsel would have preferred,

Attorney Balazs confirmed at the November 14, 2025 hearing that he visited Defendant after October 1, 2025.

Defendant's pending motion also asserts that "[n]o attorney can be expected to work indefinitely without compensation while maintaining the zealous advocacy required by professional standards and constitutional mandate." (Doc. No. 81 at 7.) But the question before the court is not whether Attorney Balazs and Attorney Knapp can be expected to continue representing Defendant Allison indefinitely without adequate compensation. The question is whether—despite the lapse in funding—defense counsel have nonetheless provided effective assistance of counsel to Defendant Allison.[2] As discussed above, the record in this case indicates that they have done so. Thus, Defendant Allison has not met his burden of showing his counsel's performance fell below an objective standard of reasonableness and that such performance prejudiced him in this case. Accordingly, the court finds defense counsel has provided effective assistance of counsel to date.

Further, because the government shutdown ended a few days before the hearing and in re-opening the government Congress provided funds for the Judiciary to make payments to CJA attorneys, counsel acknowledged that circumstances have changed and the lack of compensation was no longer indefinite. Nevertheless, counsel argued that dismissal of the indictment was the only appropriate remedy for the purported Sixth Amendment violation.[3]

However, for all of the reasons explained above, the court finds that Defendant Allison

---

[2] The court acknowledges the extreme hardship that the lapse in funding placed on CJA panel attorneys, many of whom did not receive any CJA payments since late-Spring and early-Summer 2025, well before the government shutdown exacerbated an already untenable situation. The court fully recognizes the extraordinary undertaking by CJA attorneys during this unprecedented time, though this motion necessarily focuses on the individual circumstances of Defendant Allison and the assistance of counsel he has received in this case.

[3] In opposing the pending motion, the government notes that in cases where "counsel may have personal financial circumstances that prevent them from continuing to discharge their duties without immediate compensation, . . . , the proper remedy is not dismissal, but withdrawal and substitution of counsel." (Doc. No. 83 at 6.) Notably, defense counsel have not filed a motion to withdraw in this case. Given that defense counsel have provided effective assistance to date and the lapse in funding that may have otherwise prevented them from continuing to do so has been resolved, the court need not address this issue further.

has not shown a Sixth Amendment violation, and on that basis, the court will deny Defendant Allison's motion to dismiss the indictment.[4]

## CONCLUSION

Accordingly, Defendant Allison's motion to dismiss the indictment (Doc. No. 81) is DENIED.

IT IS SO ORDERED.

Dated:   **December 15, 2025**                              _____
                                                            Dena Coggins
                                                            United States District Judge

---

[4] After the November 14, 2025 hearing, Defendant Allison filed two notices of supplemental authority. (Doc. Nos. 87, 94.) The court recognizes that other judges in this District have addressed similar motions to dismiss an indictment due to the lapse in CJA funding, and some have found Sixth Amendment violations, *see United States v. Ortiz*, No. 2:24-cr-00302-JAM, 2025 WL 3157821 (E.D. Cal. Nov. 12, 2025); *United States v. Evanovich*, No. 2:24-cr-00079-DJC, 2025 WL 3208308 (E.D. Cal. Nov. 17, 2025), and others have not found a Sixth Amendment violation, *see United States v. Vasquez*, No. 2:25-cr-135-WBS, 2025 WL 2961906, at *4 (E.D. Cal. Oct. 20, 2025) ("Vasquez's argument for a conflict of interest might be more persuasive had his counsel not accepted appointment after she was on notice that funding for CJA-appointed counsel had already been exhausted. To date, Vasquez's counsel has not filed a motion to withdraw, as would be proper in the event of a *genuine* conflict of interest."). The court finds the decisions in *Ortiz* and *Evanovich* to be distinguishable, as both of those defendants had upcoming trial dates and counsel were unable to adequately prepare for trial due to the lapse in funding. *See Ortiz*, 2025 WL 3157821, at *1 ("Trial is set in this matter for January 26, 2026, a mere ten weeks from now. To expect defense counsel to properly prepare for trial, while consistently denying her the tools to do so is, in this Court's view, not only unconscionable but also unconstitutional."); *see Evanovich*, 2025 WL 3208308, at *1 ("To expect Defendant's Counsel to adequately prepare for a trial currently set for February 2026 while consistently denying him the tools to do so would be, in this Court's view, not only unconscionable, but also unconstitutional."). In contrast, a trial date has not been set in this case.